COLONIAL MOTOR COACH CORPORATION, Plaintiff, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, Jefferson County, April 25, 1928.

Negligence — damages — original complaint demanded judgment for destruction of plaintiff's motor coach by reason of defendant's negligence — one of bus passengers was killed and two others were injured in accident — actions by administratrix of deceased passenger and injured passenger were settled after defendant railroad company had each complaint dismissed — settlements were made part of minutes of court and jury was directed to render verdicts for amount of each settlement — third action was settled against both plaintiff and defendant, by plaintiff, which has paid all amounts — amended complaint may set up, as elements of damage, payments made by plaintiff with interest — complaint alleges coach was so wrecked as to be worthless — complaint cannot be amended to set up loss of use — damages for loss of use are limited to cases in which damage to vehicle was not such as to render it beyond repair at reasonable cost.

This is an application to serve an amended complaint in plaintiff's action, which was originally brought to recover $14,000, for the destruction of plaintiff's motor coach by reason of the negligence of defendant railroad company. It appears that the administratrix of one of the bus passengers, killed in the accident, and a second passenger each brought actions against the bus company

and the railroad company as joint tort feasors to recover for damages; that both actions were tried together, and at the close of the cases defendant railroad company, on motion, brought about the dismissal of each complaint and had judgment entered in each action to that effect. Without further trial, plaintiff then effected a settlement of each action, which settlements were made a part of the minutes of the court and recited that the jury, upon direction of the court, rendered a verdict for $12,000 in the death case and $750 in the other action. A third action against both plaintiff and defendant railroad company was settled by plaintiff for $575. Plaintiff has paid all amounts and now seeks authority to serve an amended complaint setting up, as elements of damage, the payments made, together with the damage arising from the loss of use of the motor vehicle.

Since the complaint alleges that the coach was so wrecked as to be worthless, by reason of its being destroyed, permission to amend the pleading to show loss of use must be denied, for damages for loss of use are limited to those cases in which damages to the vehicle were not such as to render it beyond repair at a reasonable cost.

Where a damaged vehicle may be repaired, the cost of repairs together with loss of use are proper elements of damage, but if the vehicle has been totally destroyed there should be no allowance for damage for loss of use.

The measure of damages in a complaint alleging the wreck to be worthless is the difference in value of the vehicle before and after the accident.

But the complaint may be amended so as to allege, as an element of damage, the payments made by the plaintiff in settlement, with interest thereon.

The fact that plaintiff's insurer paid the loss cannot bar the granting of this motion, since that point may well be raised at trial when there may be shown what relations exist between plaintiff and its insurance carrier.

Nor should the motion be denied on the ground that plaintiff was a joint tort feasor, since plaintiff does not seek to recover on the theory that it was subrogated to the rights of any of the bus passengers. Nor does plaintiff base its motion or claim upon the theory of contribution, but rather upon its claim of indemnity, on the ground that if it were liable to respond in damages to its passengers because of some negligence of its own, the primary negligence and the real cause of the accident was the negligence of the railroad company. Furthermore, the issues in this action cannot be determined on a motion to amend the complaint.

The amount of damages paid in each action was not paid by reason of the compulsion of judgment, but rather by reason of settlements effected with the consent and approval of the defendant railroad company, so that objection to the amendment of the complaint on the ground that in making the settlements plaintiff acted as a volunteer and not under compulsion of the judgment, is premature and should be passed upon by the trial court.

MOTION by the plaintiff for an order permitting the amendment of the complaint by setting up additional elements of damage.

*A. Raymond Cornwall,* for the plaintiff.

*Purcell, Cullen & Pitcher,* for the defendant.

SMITH, J. The plaintiff moves for permission to serve an amended complaint. It is a corporation organized under and pursuant to the provisions of the Transportation Corporations Law of the State of New York, and is engaged in the business of carrying

passengers for hire in its motor coaches or vehicles.   The defendant operates the railroad line which runs from the city of Watertown to the village of Carthage, which line passes through the village of Felts Mills, in the county of Jefferson, N. Y.

On the 10th of September, 1926, the plaintiff was driving or operating one of its motor coaches in its regular traffic on the highway at a point where it crosses the tracks of the defendant in or near said village of Felts Mills; while attempting to cross said tracks the motor coach was struck by a locomotive drawing a train operated by the defendant, with the result that the coach was damaged beyond repair.   In this action as originally brought the plaintiff seeks to recover the sum of $14,000 on account of the damages it has suffered by reason of the destruction of its coach.   The basis of the claim of damage is that it was caused solely by the negligence of the defendant and without fault or negligence on the part of the plaintiff.

It appears by the moving papers:

(a) That on the occasion in question one John Coston, one Kenneth Eldridge and one Emmitt Tatum were passengers for hire in said motor coach of the plaintiff; that said John Coston was killed; that said Kenneth Eldridge and said Emmitt Tatum were seriously injured; and the plaintiff claims that the death of said John Coston and the injuries to said Eldridge and Tatum were caused by the same negligence on the part of the defendant which caused the damage to its motor coach, and without fault or negligence on the part of the plaintiff.

(b) That thereafter Mary Coston, as administratrix, etc., of said John Coston, deceased, brought an action in the Supreme Court against the plaintiff and defendant herein, as joint tort feasors, to recover from them the damages suffered by her by reason of the death of her husband, said John Coston.

(c) That said Eldridge likewise brought an action in the Supreme Court to recover damages for the injuries suffered by him on the occasion in question.

(d) That both of said actions were tried together; that at the close of the plaintiffs' evidence the defendant railroad company moved for a nonsuit and a dismissal of the complaint as against it in each of such actions on the ground that the plaintiff had failed to make out a cause of action against the defendant railroad company; that the motion for a nonsuit and for dismissal of the complaint was granted in each action and a judgment was entered dismissing the complaint in each action against said defendant railroad company; that immediately thereafter and without further trial the defendant coach corporation effected a settlement of both

of said actions, and that after the announcement of the settlement such proceedings were had, in the presence of the jury, that the trial court stated: "The parties in this action have adjusted their differences, and I direct you to find a judgment for the plaintiff in the Coston action, No. 42, for twelve thousand dollars, and also a judgment in the Eldridge action, No. 74, for the sum of seven hundred and fifty dollars." The minutes of the court show that the jury rendered a verdict as directed by the court.

(e) That said Emmitt Tatum likewise brought an action in said court against the plaintiff and the defendant herein to recover for damages on account of the injuries sustained by him in said accident, and that, after a partial trial of the issues in said action, the plaintiff herein effected a settlement thereof for the sum of $575, and that said Tatum executed a general release to both the plaintiff and the defendant herein of all claims for damages for injuries sustained by him on the occasion in question.

(f) That the plaintiff has paid to said administratrix of the estate of said John Coston the sum of $12,000, to said Kenneth Eldridge the sum of $830.50, and to said Emmitt Tatum the sum of $575.

(g) That plaintiff has suffered, on account of the loss of the use of the motor coach, damages in the further sum of $10,000.

Plaintiff, therefore, seeks, on this motion, an order authorizing it to serve an amended complaint setting up as elements of damage the payments made by it as aforesaid, with interest thereon, and also the damage claimed to have been sustained by reason of the loss of the use of its motor coach.

In so far as application is made for permission to amend the complaint by the allegation of damages on account of loss of use of the motor coach, the motion must be denied. The allegation of the complaint is that the coach was so wrecked as to be worthless, and that it was and is entirely and totally destroyed. Under such an allegation the measure of damages would be the difference in value of the motor coach before and after the accident. The right to recover for loss of use should be limited to those cases in which the injury to the vehicle was not such as to render it beyond repair at a reasonable cost. Where an injured vehicle may be repaired, then the cost of repairs, together with the loss of use, would be proper elements of damage, but where the vehicle has been totally destroyed there should be no allowance of damages for loss of use. Cases in which damages for loss of use have been allowed have been in instances where vehicles have been repaired, and damage on account of loss of use has been allowed for such period of time as was necessarily occupied in repairing the vehicle. If the proposed amendment had been to the effect that the plaintiff was compelled

to buy a coach to replace the one destroyed, and that during the lapse of time between the date of the accident and the time within which it reasonably could purchase and get delivery of a suitable coach it had suffered loss of earnings, such an allegation might have afforded a basis for damage for loss of use. Such, however, is not the allegation of the proposed amendment; it is rather for the loss of use for a period commencing September 10, 1926, and continuing from said date at the rate of fifty dollars per day. The motion to amend the complaint in this respect should, therefore, be denied.

Now, as to the other new elements of damage. If, on account of damages suffered in the Coston, Eldridge and Tatum cases, the plaintiff had brought three separate actions against the defendant to recover the damages which it had been compelled to pay on account thereof, the court, upon application, would order the consolidation of these actions with the present action for the reason that the damages arose out of the same transaction. It, therefore, would appear, on the face of the papers, that the motion to amend the complaint in the particulars stated should be granted as of course.

The defendant, however, strenuously opposes the granting of the motion in these respects on the grounds:

(1) That as to the Tatum and Eldridge claims and as to all but $2,000 of the Coston claim the plaintiff has no cause of action, for the reason that its loss was fully covered by insurance and has been paid by the Standard Accident Insurance Company, and that, therefore, the insurance carrier of the plaintiff is the only party which has any interest in said claims — excepting as to $2,000 paid by the plaintiff upon the settlement of the Coston action, which amount was the excess of the amount of the settlement over and above that part thereof paid by the insurance carrier.

(2) That the parties at most were joint tort feasors, and that there can be no contribution.

(3) That the plaintiff, in making the settlement of the Tatum, Eldridge and Coston claims, acted as a volunteer and not under the compulsion of a judgment.

As to the first ground of opposition to the granting of the motion, to the effect that plaintiff has only suffered damage, in any event, to the extent of $2,000, because the balance of the damage has been paid it by the insurance carrier, I do not think that it is tenable at the present stage of the action. The insurance carrier was the carrier of the plaintiff, not of the defendant. The defendant, if liable at all, is liable for the total damage sustained by reason of the accident. All the defendant is entitled to is the assurance that it will be protected, in the payment of any judgment, against

any claim for like damage which might be made by the insurance carrier. There is nothing before the court of the terms of the contract of insurance. It is obvious that an insurance carrier, having paid the loss occasioned by a wrongdoer, is entitled to be subrogated to the rights of the assured against him, and that if the assured sustains a loss beyond the amount of the insurance he is entitled to have it satisfied by an action against the wrongdoer, and if in such action there come into his hands any sum for which he ought to account to the insurer, reimbursement to that extent may be compelled in an action by the latter; the assured in such case will not be required to account for more than the surplus remaining in his hands after satisfying his own excess of loss in full and expenses incurred, unless the insurer shall have contributed to and joined him in the prosecution of the action. ( *Newcomb* v. *Cincinnati Ins. Co.*, 22 Ohio St. 382; 10 Am. Rep. 746.)

If the insurance carrier were brought in as a party plaintiff in the action and it should appear upon the trial that it had paid any part or all of the damage sustained by the assured, then of course, in so far as it had made payment, the action of the plaintiff would have to be dismissed to such extent, and any judgment recovered would be in favor of the insurance carrier to the extent that it had paid the damage. ( *Lord & Taylor* v. *Yale & Towne Mfg. Co.*, 230 N. Y. 132.)

The points raised in this respect may better be raised at the time of the trial, when the situation of the parties and all the facts as they exist at the time are before the court. There is nothing here to show what relations in respect of these claims exist between the plaintiff and its insurance carrier, or whether the insurance carrier is now or before the trial may be actually " vouched in " the case, or be brought in as a party plaintiff. The defendant's interest is only to the extent that it may not be held liable in damages twice by reason of the same accident.

There no doubt are many instances in which not the plaintiff but the insurance carrier is the real party in interest, and yet, under the law as it stands at present, if upon the trial the question of insurance be raised by the opposing party the court would be apt to direct a mistrial. In such cases it would seem that the plaintiffs should have the right to recover in their own right for damages sustained, irrespective of the fact that they were covered by insurance against such damages, and unembarrassed by the revelation of such coverage. My attention has been called to no case which holds to the contrary. Under such circumstances of course the defendant would and should be protected against any subsequent claim on the part of the insurance carrier.

The second ground of opposition raised by the defendant is that the plaintiff was a joint tort feasor. The plaintiff does not seek to recover on the theory that it was subrogated to the rights of Coston, Eldridge or Tatum. It would fail on the theory of subrogation for the reason that it would stand in their shoes, and as to them — particularly as to Coston and Eldridge — it was determined by the granting of a nonsuit that the plaintiffs in the Coston and Eldridge cases had failed to make out a cause of action against the defendant railroad company. The plaintiff of course does not base its motion or claim upon the theory of contribution; if it did it would have to fail, because if it should be found that the accident was the result of concurring negligences on the part of both the plaintiff and the defendant it would be out of court, for there can be no contribution between joint tort feasors. The basis of its claim is indemnity, on the ground that even if it were liable to respond in damages to these plaintiffs because of some negligence of its own, the primary negligence and the real cause of the accident was the negligence of the defendant railroad company.

If the plaintiff had alleged a state of facts which clearly set up a case of primary and secondary negligence, there might be here no question for the court to consider, for the rule is quite familiar that where a person " without fault on his part has been compelled to pay damages occasioned by the negligence of another he is entitled to indemnity from the latter, whether contractual relations exist between them or not." Under the circumstances the law implies an obligation on the part of the one actually responsible for an accident to pay the damages resulting from his own negligence. Such situations arise in cases where a master has been compelled to pay damages for injuries sustained by a third person by reason of the negligence of the master's servant, where the master himself was not actually at fault. The question most frequently arises in cases in reference to municipalities, where a nuisance existed in the streets, created by another, and where the municipality had the primary duty to keep its streets safe for the traveling public. There are also the dock or pier cases, which are of similar character. The theory in such situations is that the parties do not stand *in pari delicto* to each other, even though a third person injured may recover against either. (*Trustees of Geneva* v. *Brush Electric Co.*, 50 Hun, 581; *Scott* v. *Curtis*, 195 N. Y. 424, 428; *Oceanic Steam Navigation Co.* v. *Co. T. E.*, 134 id. 461.)

Upon the facts in the instant case it appears that the accident occurred by reason of the collision of two moving objects, one

57

under the control of the plaintiff, the other under the control of the defendant; there was, therefore, action on the part of the plaintiff and action on the part of the defendant. The situation is unlike the street cases, or the cases of platforms at railroad stations, or piers, to go upon which the public is invited, and where the municipality, owner or tenant has been given permission to do an act, lawful in itself, which, because of improper protection or method, creates a nuisance, on account of which a third person is injured, where recovery may be had either against the owner or the licensee or tenant as the case may be. In such cases there are two separate acts, one the granting of the permission, the other the failure of the licensee to do the thing permitted to be done in a careful or lawful manner. In such cases there is the primary duty of the licensor to the public, which duty it cannot pass on to its licensee in such manner as to escape the burden of such duty. No wrong is committed by the licensor in allowing the licensee to do the work, and the licensee would be liable over the licensor because he had failed to do or guard the work in a proper manner. In such cases there is no coincidence or coalescence of the negligence of the two parties.

Here were two activities, uniting at the moment, making possible the accident. It may be difficult to perceive how in this case the plaintiff, in the event it be found guilty of negligence coincident with that of the defendant, can recover against the defendant. It has been held that where the negligence of the parties has been of the same character there can be no recovery over. (*Union Stockyards Company of Omaha* v. *Chicago, Burlington & Quincy R. R. Co.,* 196 U. S. 217.) That was a case where there had been a failure on the part of both parties to inspect. It has, however, been held that there may be a recovery over where the duty on the part of both parties was that of inspection, but where one party was led not to inspect by reason of reliance upon the conduct of the other, although, as to a third party, each owed a duty of inspection. (*Lord & Taylor* v. *Yale & Towne Mfg. Co.,* 230 N. Y. 132; *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232.)

The issues in the action cannot be determined on this motion. It is conceivable that the plaintiff might show that, as a carrier of passengers for hire, it owed to such passengers a duty of care and caution of such a high degree as to exceed that duty of care and caution which an ordinary driver of an automobile would be called upon to exercise under like circumstances, and that the defendant railroad company would have no right to expect or anticipate from the plaintiff a higher standard of duty than an ordinary automobile driver would be held to under like circum-

stances.    Such a state of facts might exist and the evidence might justify a finding that under such circumstances the defendant railroad company was primarily the cause of the accident, even though the plaintiff may have been guilty of negligence in that it did not meet the high standard exacted from it as a public carrier. The plaintiff might show that, even though it was negligent in getting into the position that it was, the defendant had no right to run it down and cause the damage if it could, with the exercise of reasonable care, have stopped its train in time to have avoided the accident, or after it saw — or with the exercise of reasonable care should have seen — the coach approaching the tracks and the imminence of an accident.    These are questions for the trial court.

No contention is here made — nor could it well be made — that the granting of the motion for nonsuit as against the defendant railroad company in the Coston and Eldridge cases is *res adjudicata* in the action brought by the plaintiff herein to recover for damages to its coach; nor is it determinative of the question of the liability of the defendant to the plaintiff herein.    The plaintiff in the instant case (defendant in the Coston and Eldridge cases) was not in control of the testimony offered in those cases as bearing upon the negligence of the defendant railroad company; the granting of the nonsuit as against the defendant railroad company made futile any effort, on those trials, on the part of the defendant coach corporation to fix the liability upon the defendant railroad company; there were no cross-answers served here between the parties defendant in those actions, and the issues between them could not have been tried out without the consent of the plaintiffs and the consent of the court, and excepting through the taking of a special verdict. (*Oceanic Steam Navigation Co.* v. *Co. T. E.*, 134 N. Y. 461.)    Quite often, where there are two parties defendant in a negligence case, by the consent of all parties and of the court, in the interest of a prompt determination and to avoid a multiplicity of suits, all questions are determined through the instrumentality of a special verdict, and, if litigated and determined, the determination becomes final as between the parties.

In the instant case the issue as to the actual cause of the accident and as to whether or not, on its evidence and the evidence of the defendant, the plaintiff herein was guilty of negligence contributing to the accident, would have to be determined.

It is obvious that if the plaintiff recover from the defendant railroad company for the damage it has suffered on account of the destruction of its coach it logically follows that it would be entitled to recover all of the other elements of its damages growing out of the accident — unless by conduct on its part it has defeated its

right to recover. (*Nashua Iron & Steel Co.* v. *Worcester & Nashua Railroad Co.*, 62 N. H. 159.)

In considering the third ground of opposition to the granting of the motion — that in paying the Coston, Eldridge and Tatum claims the plaintiff acted as a volunteer and paid without compulsion, and, therefore, is not entitled to recover over — I am treating the elements of damage growing out of the settlement of the claims in those three cases as if the plaintiff had made the settlement in each of these cases without the intervention of the court; for that in substance is actually what happened. There was no determination of the liability of the plaintiff by a judgment of the court. It is true that, in the Coston and Eldridge cases, the settlement was after a direction of a verdict based upon the settlement, the effect of which was to place the stamp of approval of the court upon the settlement in the case of the administratrix of John Coston, deceased, and in the case of an infant in the Eldridge case. In the Eldridge case there could have been no settlement excepting by order of the court; in the Coston case the administratrix and all parties desired to be protected through the instrumentality of a judgment. But, stripped of formalities, what actually was done was that a settlement was effected of these three causes of action by the plaintiff herein without (excepting possibly in the Tatum case) the consent and approval of the defendant herein.

The defendant must be held liable, if held liable at all, on the theory of a contract of indemnity implied by law. Ordinarily a contract of indemnity, as the word implies, is a contract to pay loss or damage, as distinguished from a mere obligation to·protect against liability. There are suggestions in the authorities for the proposition that one who would recover over, under an implied contract of indemnity, must have been compelled by judgment to pay the loss. In 14 Ruling Case Law (at p. 52) the basis of liability is stated as follows: " A person who, without fault on his own part, has been compelled, *by a judgment of a court having jurisdiction*, to pay damages occasioned by the negligence of another is entitled to indemnity from the latter."

In *Oceanic Steam Navigation Co.* v. *Co. T. E.* (*supra*) the court stated: " The right to indemnity stands upon the principle that every one is responsible for the consequences of his own negligence, and if another· person has been compelled (*by the judgment of a court having jurisdiction*) to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him." Other cases might be cited on this subject giving the same intimation — that the implied contract of indemnity in such cases was to

indemnify against loss. But, even when such was the rule, the indemnitor was not bound, either as to the fact of the liability or as to the amount of damages recovered, unless he had been vouched into the case by notice. (*Fedden* v. *Brooklyn Eastern District Terminal*, 204 App. Div. 741; *Village of Port Jervis* v. *First National Bank*, 96 N. Y. 550.)

It has, however, been finally determined, and the rule in the State of New York is, that a person entitled to indemnity, where he is liable to be mulcted in damages, may settle the claims and recover over against the indemnitor, subject to the proof (1) of liability and (2) as to the reasonableness of the amount of settlement.

In *Webb* v. *Pond & Lansing* (19 Wend. 423) it is stated: " The covenant is not simply to indemnify and save harmless against the bond, but it is to indemnify and save harmless the plaintiff from his liability on the bond. The breach assigned not only shows that the plaintiff became *liable* on the bond, but that being liable, he has been called upon, and forced and obliged to pay, and has actually paid the sum, which he seeks to recover. There can be no doubt that the breach is sufficient. The plaintiff was not bound to wait until he was sued on the bond; he had the right to pay the money, and then resort to the covenant for his indemnity."

The rule is familiar that money voluntarily paid by one person for another may not be recovered back; that, to maintain an action to recover moneys paid out and expended, it is essential to prove a request to make the payment on the part of the person benefited, either expressed or fairly to be implied. (*City of Albany* v. *McNamara*, 117 N. Y. 168.)

The cases under consideration were not cases where plaintiff herein was a pure volunteer, a stranger; actions had been brought against both of the parties; there exists the contractual obligation implied by law on the part of the defendant to indemnify the plaintiff against loss or damage in the event the plaintiff was liable to a third person, if it should be found to be primarily responsible for the accident. While not placing the right to settle in advance of a judgment upon the ground that the implied contract was for indemnity against liability with proof of damage, it has been held that while " the contract of indemnity implied by law, in favor of one who is legally liable for the negligence of another, covers loss or damage, and not mere liability. * * * On the other hand, such loss or damage may be voluntarily paid by the innocent party who is legally liable without waiting for judgment * * *, but, in that event, he undoubtedly assumes the risk of being able to prove the actionable facts upon which his

liability depends as well as the reasonableness of the amount which he pays." (*Dunn* v. *Uvalde Asphalt Paving Co.*, 175 N. Y. 214; *Cornell* v. *Travelers' Ins. Co.*, Id. 239, 255; *Lissner* v. *Haynes Automobile Co.*, 105 Misc. 359.)

The wisdom of the rule as established in this State is obvious. The courts favor settlements of negligence actions. By settlements the perils and expense of litigation are avoided, and the burden upon courts already overburdened is relieved by every settlement. No harm can possibly arise to a defendant liable over by reason of such a settlement, because the plaintiff in making the settlement without the consent of his indemnitor defendant is still under the obligation of proving (1) that he was liable, (2) that the settlement was reasonable, and (3) that his liability was of such a character that in spite of it he may recover over against the defendant.

The three cases of Coston, Eldridge and Tatum have been considered on the same basis, to wit, that the amount of damages paid in each case was not paid perforce of compulsion of judgments but rather by reason of settlements; such are the allegations of the complaint, and such is the opinion of the court. If, however, as urged by the defendant herein, it could be held that the judgments, directed as a result of the settlements in the Coston and Eldridge cases, presupposed a finding of fact to the effect that the defendant coach corporation therein was negligent, then these judgments should become proof and, the defendant railroad company having been a party to the action, conclusive proof that the plaintiff herein was legally liable to the administratrix of Coston, deceased, and to Eldridge, for the amount of the verdict in each case; the nonsuit would have determined that the record did not disclose a state of facts upon which the defendant herein could have been held liable over to the plaintiff herein; and this would have amounted to no more than a failure on the part of the plaintiffs in those actions to fix liability upon the defendant railroad company; and, as heretofore shown, the plaintiff herein is not bound by that determination. No doubt the record would disclose that the question as to whether the defendant herein was liable over to the plaintiff herein was not litigated; as between the plaintiff and the defendant herein it might disclose such a state of facts as to the nature of the negligence of the plaintiff herein as to preclude any possibility of a recovery over in this action. A somewhat similar situation is revealed in the case of *Fulton County Gas & Electric Co.* v. *Hudson River Telephone Co.* (200 N. Y. 287). I am of the definite view, however, that it cannot be held that such a state of facts as is revealed in the above-cited case exists here; that was a case where the injured party recovered a judgment

against both parties, and one had paid and was seeking to recover over against the other. Here, while both parties were sued, a nonsuit was granted as against the defendant herein at the close of the plaintiffs' case, and the judgments of dismissal became conclusive only as against Coston and Eldridge, and not against the plaintiff herein. In any event, even this question raised by the defendant on the motion cannot be passed upon here but will be for the determination of the trial court.

The motion of the plaintiff for permission to serve the proposed amended complaint, in so far as it sets up an additional basis of damages on account of loss of use of the coach, is denied; in other respects the motion is granted. No costs.

Ordered accordingly.